Matter of Lawyers for Children v New York State Off. of Children & Family Servs.
2026 NY Slip Op 03218
May 21, 2026
Court of Appeals
Cannataro, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Lawyers For Children, et al., Appellants,
v
New York State Office of Children and Family Services et al., Respondents.

Decided on May 21, 2026
No. 37

William C. Silverman, for appellants.
Beezly J. Kiernan, for respondents.
Merril Sobie, Columbia Law School Family Defense Clinic et al., Safe Families for Children Alliance, amici curiae.

Cannataro, J.

[*1]
The New York State Office of Children and Family Services ("OCFS") administratively created the Host Family Home program to function as an alternative to the state's statutory voluntary foster care regime. We hold that OCFS lacked the authority to do so, and therefore reverse.
I.
OCFS is charged with enforcing the child welfare laws and supervising the foster care system in New York (see generally Social Services Law §§ 17, 20). As part of its duties, OCFS administers the voluntary foster care system, pursuant to a statutory scheme which allows parents to temporarily place their child in the custody of an "authorized agency" without forfeiting their parental rights (id. § 384-a). The authorized agency is then permitted to "place out" or "board out" the child with a foster family during the term of the placement (id. §§ 371, 374). Parents are generally entitled to reassume custody of their children at their discretion within 10-20 days of their request, even before the term of the placement has run (absent a court order preventing the recovery) (see id. § 384-a [2] [a]).
Before permitting parents to place a child in temporary foster care, OCFS is required to offer appropriate "preventive services," which are intended to help resolve the familial impairment or disruption so that the child need not be separated from the family home (see Social Services Law §§ 398 [1] [a], 409, 409-a [1] [a] [i]). One of the preventive services OCFS may offer is "respite care," or "the temporary care and supervision of a child to relieve parents . . . where immediate relief is needed to maintain or restore family functioning" (id. § 409-a [5] [f]). By [*2]regulation, OCFS can only offer respite care for up to 30 days at a time (with no exceptions), or up to seven weeks per year (absent extraordinary circumstances) (see 18 NYCRR 435.5). In addition, OCFS must investigate whether any known family or friends could take care of the child before authorizing placement and must place siblings in the same foster home unless joint placement would not be in their best interests (see Social Services Law § 384-a [1-a]).
The voluntary foster care statutes also mandate judicial involvement and oversight at several key junctures. At the outset, OCFS must petition Family Court to approve any placement expected to last longer than 30 days. The court may only do so after assessing that the placement was "knowingly and voluntarily" sought by the parent; that the placement would be "in the best interest of the child"; that "reasonable efforts were made . . . to prevent or eliminate the need for removal of the child from [their] home;" and that OCFS complied with the other miscellaneous requirements of Social Services Law § 384-a (id. § 358-a [1], [3]). If placement lasts for at least eight months, the Family Court Act requires that Family Court hold a "permanency hearing" where it assesses the child's well-being in the foster home and determines what, if any, further action would serve the best interests of the child (see Family Ct Act § 1089; Social Services Law § 384-a [3] [a]). These hearings must be held every six months thereafter until termination of the placement, or until the child ages out of foster care. Both parents and children are entitled to assigned counsel during these proceedings (see Family Ct Act §§ 249 [a], 262 [a], 1090 [a], [b]; Social Services Law § 358-a [6]).
II.
In 2021, OCFS promulgated the regulations establishing the Host Family Home program (see 18 NYCRR 444). This program resembles voluntary foster care in many respects. Under the Host Family Home program, OCFS designates a "host family home agency" as an "authorized agency" under the Social Services Law, which purportedly entitles the agency to independently board out children with a "host family" (id. § 444.2, citing Social Services Law § 371 [10] [a]). A parent can contact any host family home agency directly to request placement for their child. The agency then identifies a potential host family that could care for the child; if the parent agrees with the placement, they sign a "Declaration of Person in Parental Relation" under General Obligations Law § 5-1551, which authorizes the host family to house the child and make certain decisions on their behalf (see 18 NYCRR 444.4, 444.5). Parents can place their children for up to six months at a time, which can be extended for indefinite six-month increments until the child turns eighteen (see id. §§ 444.2 [b], 444.5 [h]). Notably, under this scheme parents retain legal custody of their child and can demand their immediate return at any time. There is no requirement of judicial intervention of any kind, and therefore no assignment of counsel to parents or children at any point during the placement.
In 2022, three legal services organizations that contract with state agencies to represent children in voluntary foster care proceedings filed this CPLR article 78 petition to annul the Host Family Home program, claiming it was promulgated contrary to law and in excess of OCFS's regulatory authority. Supreme Court initially dismissed the proceeding for lack of standing. The Appellate Division reversed and remitted, holding that petitioners sufficiently "alleged an injury in fact that is not merely conjectural," since "implementation of the [Host Family Home] program would, in essence, place children outside their home without the right to legal representation to which they would be entitled by Social Services Law § 358-a and that petitioners have a contractual obligation to provide" (218 AD3d 913, 913 [3d Dept 2023]).
On remittal, Supreme Court dismissed the petition on the merits (2023 NY Slip Op 34906[U] [Sup Ct, Rensselaer County 2023]). The Appellate Division affirmed, with two Justices dissenting (240 AD3d 78 [3d Dept 2025]). The majority concluded that the Host Family Home program fell within OCFS' broad authority to "board out" children and provide preventive services to keep children out of the foster care system, and that OCFS's use of that authority did not contravene the separation of powers doctrine articulated in Boreali v Axelrod (71 NY2d 1 [1987]). In contrast, the dissent argued that OCFS elided the statutory mandates of the voluntary foster care system, and that the Host Family Home program constituted impermissible agency policymaking (see 240 AD3d at 91 [Pritzker, J., dissenting]).
Petitioners appealed as of right to this Court (see CPLR 5601[a]).
III.
As a preliminary matter, petitioners challenging agency action can demonstrate standing by alleging an "injury in fact" that falls within the "zone of interests of concerns sought to be promoted or protected by the statutory provision under which the [government] has acted" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d 505, 515 [2023]; see also Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019]; New York State Assn of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). Petitioners had standing to bring this [*3]proceeding given that, under the unique circumstances of this case, they are the parties best situated to vindicate children's interest in the statutory right to counsel under the voluntary foster care system, and it is exceedingly unlikely that children would be able to effectively seek counsel to mount this challenge without petitioners' involvement (see Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 311 [2015]).
IV.
The Host Family Home regulatory program must be annulled because it undermines the carefully designed foster system, and contravenes various critical statutory protections the legislature saw fit to include in that system.
Executive agencies cannot promulgate rules that "direct[ly] conflict with the plain language" of the statute (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480-81 [1978]; see also Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980] ["(I)f the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight"]), or are otherwise "out of harmony" with the statutory scheme (Matter of Jones v Berman, 37 NY2d 42, 53 [1975]). While agencies are permitted to "adopt regulations that go beyond the text of [their] enabling legislation," the regulations must be "consistent with the statutory language and underlying purpose" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 221 [2017], citing Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004]).
The statutory foster care system is the product of decades of legislative reform intended to strengthen and standardize the state's previous informal foster care regime, whereby parents placed their children in foster homes with little to no state assistance or judicial oversight (see generally brief of Prof. Merril Sobie as amicus curiae, 5-16). It is not clear which of these statutes authorize the Host Family Home program. Respondents have assembled a host of disparate statutory bases that they maintain jointly allow this regulatory program, or at least gesture towards its general harmony with the law. But regardless of which provisions one looks to, none of the statutes authorize or can be harmonized with the challenged regulations.
Respondents argue that Social Services Law § 371 allows OCFS to designate private Host Family Home agencies as "authorized agencies" (see 18 NYCRR 444.2 [c]), and that Social Services Law § 374 would empower these so-designated agencies to "place out" or "board out" children with host families. These statutes cannot be read as respondents suggest. When children are placed out or boarded out by an "authorized agency," the law mandates that "custody of [the] child . . . shall be vested . . . in the authorized agency" (Social Services Law § 383 [2]). The Host Family Home program purports to allow an authorized agency to do this without taking custody of the child (see 18 NYCRR 444.2 [b]). Moreover, the Social Services Law lists every specific type of out-of-home placement an authorized agency is allowed to engage in, including conventional foster care, therapeutic foster care, group homes, and boarding houses (see id. §§ 374-b et. seq.; 398). The Host Family Home program, as a creature of regulation rather than statute, is not on the list. The legislature's choice not to include a program like Host Family Homes precludes respondents from adding it to the list by administrative fiat (see Colon v Martin, 35 NY3d 75, 78 [2020] ["(W)here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (internal quotation marks omitted)], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240; see also Jones, 37 NY2d at 52-53 [1972] [where statute "list(ed) five requirements," regulation which "add(ed) a requirement not found in the existing State statute" was invalid]).
Respondents are incorrect that the Host Family Home program merely supports parents' extant rights in some passive capacity. The very first provision of the regulatory suite states that the Host Family Home program is "approved and supervised by [OCFS]," and it "shall be governed by the provisions of this Part" (see 18 NYCRR 444.1). Respondents cannot find authorization for this comprehensive regulatory program, with its own myriad rules and limitations (see id. §§ 444.2-444.19), in a right that belongs to parents, and which the law specifically commands OCFS not to interfere with.
Respondents next argue that this program is consistent with the policies of preventive services under the Social Services Law. The relevant statutes instruct that these services help "avert[] an impairment or disruption of a family which will or could result in the placement of a child in foster care" and otherwise allow the child to "remain with or be returned to his or her family" (Social Services Law §§ 398 [1] [a], 409, 409-a [1] [a] [i]). Respondents' contention that host family care is in keeping with the goal of preventive services because it keeps children out of "foster care" is specious. The Host Family Home program is plainly a kind of foster care program: it purports to authorize third-party organizations to place children with a family who has agreed to take them in for a period of [*4]time. Accessing the Host Family Home program would also significantly disrupt the family unit, and the preventive services scheme provides no indication that the legislature preferred this type of impairment to the voluntary foster care system.
Respondents' attempt to analogize Host Homes to "respite care" does not aid this argument. Respite care is "the temporary care and supervision of a child to relieve parents . . . where immediate relief is needed to maintain or restore family functioning" (id. § 409-a [5] [f] [emphasis added]; see also Black's Law Dictionary [11th ed 2019], respite [defined as "a period of temporary delay; an extension of time"]). It is evident that the purpose of respite care is to avoid a prolonged engagement with foster care and the risk of damage to family functioning during brief periods of severe difficulty, by authorizing short-term care until the temporary difficulty has subsided. OCFS's own regulations appear to signal their agreement with this interpretation; they limit respite care placements to 30 days at a time, and for seven weeks out of the year in most circumstances (see 18 NYCRR 435.5). A program that authorizes indefinite foster placement in repeating six-month increments is a far cry from these temporary remedial services.
The Host Family Home program also purports to relieve its participants from some of the most important protections in the foster care system. Under the program, courts need not approve placements lasting longer than 30 days, nor are they required to assess the well-being of the child if they have been left in foster care for over eight months. Because the courts are not involved, the State need not provide assigned counsel to parents or children to advocate for them during these otherwise mandatory hearings. OCFS is likewise not required to identify known friends or relatives who might care for the child, nor offer any government-paid preventive services, before allowing parents to access host family care.
The Host Family Home program's elimination of these protections risks diverting children away from the voluntary foster care system. A parent would have virtually no reason to seek voluntary foster care if they can instead opt for host family care. If a parent wants to place their child with a foster family but does not want to temporarily cede legal custody to the foster agency, they can place them with a host family, with the State's imprimatur, and still retain custody. If a parent does not want to commit to some fixed placement term, they can choose a different State-sanctioned program that lets them get their child back at will, regardless of the circumstances that brought them there or the amount of time the child has spent with the hosts. And if the parent does not want to deal with courts (or the involvement of an assigned attorney for the child) before out placing their child with a State-sanctioned agency, they now simply do not have to. While many of the statutory limitations on foster care can be frustrating to parents who seek (or need) this kind of assistance, these limits reflect the considered policy judgment of the legislature in balancing the interests of parents and children with the overall safety and stability of the foster care system writ large. It is not for this Court nor respondents to rate the wisdom of these choices by countenancing a parallel regulatory program that attempts to evade them.FN1
We have considered respondents' remaining arguments and find them to be unpersuasive.
V.
Respondents created the Host Family Home program to offer parents an alternative means of temporarily placing out their children in times of difficulty. The governing law does not permit them to do so. None of the statutes respondents invoke authorize OCFS to promulgate this program through regulation or indicate that the legislature shared OCFS's policy preference for the placement of children in Host Homes rather than in foster care.
Accordingly, the order of the Appellate Division should be reversed, with costs, the petition granted, and the Host Family Home Program regulations (18 NYCRR part 444) annulled.
Order reversed, with costs, petition granted, and the Host Family Home Program regulations (18 NYCRR part 444) annulled. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.
Decided May 21, 2026

Footnotes

Footnote 1
Because we conclude that the Host Family Home program contravenes the applicable foster care statutes, we do not address whether the program violated separation of powers principles under Boreali (see 71 NY2d at 12; Stevens, 40 NY3d at 516 n3).