OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Can New York require that applicants for emergency public assistance benefits to pay utility bills be "tenants of record” (meaning that they have primary responsibility for making monthly rent or mortgage payments on the dwelling units for which they seek public funds)? We conclude that New York’s tenant of record requirement accords with both the Federally funded Home Energy Assistance Program (HEAP) (42 USC § 8621
 
 et seq.;
 
 Social Services Law § 97) and New York’s own State-funded emergency energy program for recipients of public assistance (Social Services Law § 131-s). We therefore reverse the judgment appealed from and the orders of the Appellate Division that declared the regulations invalid.
 

 Facts
 

 Since 1988, plaintiff Connie Goodwin has lived with her three teenage daughters and John Potter (not the girls’ father) in a single-family home in Addison, New York. As owner of the house, Potter is responsible for making all mortgage, tax and
 
 *388
 
 insurance payments on the property. Plaintiff, in turn, pays Potter $400 in monthly rent which she now receives under an Aid to Families with Dependent Children (AFDC) grant and other public assistance allowances (18 NYCRR part 352). According to a "Landlord Verification” form certified by Potter and submitted by plaintiff as part of her public assistance application, her rent includes all utilities such as heat, electricity, gas and water. Thus, although Potter is legally responsible for providing plaintiff with electricity, the account with the local utility company at Potter’s home is listed in plaintiff’s — not Potter’s — name.
 

 Having fallen behind on electricity payments and in default of an earlier deferred payment plan with the local utility company, plaintiff in late November 1990 received a final termination notice advising her that electric service would be shut off on December 6 due to an unpaid bill of approximately $450. Threatened by the loss of heat as a result of a shutoff and unable to negotiate a new repayment plan with the utility company, plaintiff on January 4, 1991 applied to defendant Department of Social Services (DSS) for Federal HEAP and New York emergency energy assistance benefits.
 
 [1]
 

 Plaintiff’s application was denied on the ground that DSS regulations require all applicants for Federal and State utility benefits to be both the tenant of record and the customer of record in order to receive funds
 
 (see,
 
 18 NYCRR 393.4, 352.5). Although plaintiff clearly satisfied the customer of record criterion, she was not a tenant of record under DSS’ definition of that term. As stated in the Notice of Denial:
 

 "Connie resides with a John Potter who is the homeowner. To qualify for Emergency Energy Assistance the applicant/recipient must be the tenant of record and have direct, primary responsibility for the payment of the energy cost. A person residing with a homeowner is not considered the tenant of record.”
 

 After DSS adhered to its original determination on administrative appeal, plaintiff filed her complaint in this lawsuit chal
 
 *389
 
 lenging the tenant of record requirement on statutory and constitutional grounds and seeking declaratory and injunctive relief. Plaintiffs primary contention is that DSS exceeded its statutory authority in promulgating the tenant of record requirement under applicable Federal and State law which, according to plaintiff, provides merely that benefits be provided to those who are in need of them. Plaintiff also argues that the tenant of record requirement violates her constitutional rights to equal protection of the law by denying her benefits which would otherwise be available if she were married.
 

 In separate orders issued 10 months apart resolving plaintiff’s motion for summary judgment, the trial court upheld the tenant of record requirement under the Federal HEAP program, while invalidating it under New York’s emergency energy assistance program. Upon consolidation of the orders, the Appellate Division, agreeing with the trial court in part, concluded that the tenant of record requirement was invalid under both the Federal and State energy assistance programs (197 AD2d 214). The Appellate Division remitted the matter for reconsideration of plaintiff’s application for benefits and for a hearing on her request for costs and attorney’s fees.
 
 [2]
 
 Neither court reached the merits of plaintiff’s constitutional claims.
 

 Having dismissed an earlier notice of appeal on the ground that no substantial constitutional question was involved and then having granted leave to appeal, we now reverse.
 

 Analysis
 

 New York currently administers two parallel programs for providing emergency assistance to needy persons threatened with imminent loss of utility service as a result of financial hardship. The programs are separately funded — one by the Federal Government, one by the State. Each originates from a separate statutory scheme and each has been implemented by DSS with distinct sets of administrative regulations. We thus examine each separately.
 

 A. HEAP/LIHEAA
 

 The Federally funded Home Energy Assistance Program, commonly known as HEAP, had its origins during the begin
 
 *390
 
 ning of the Reagan administration’s effort "to allocate funds to the states in the form of block grants so that they could be used efficiently in meeting the differing needs of local communities”
 
 (Rodriguez v
 
 Cuomo, 953 F2d 33, 38). Acting in this spirit as part of the 1981 Omnibus Budget Reconciliation Act, Congress decided to repeal an earlier low-income energy assistance statute (42 USC former §§ 8601-8612 [added by Pub L 96-223]) and "replace[ ] it with a fiscally trimmer version * * * which removed many of the federal regulations that had controlled the distribution of federal energy assistance funds”
 
 (Clifford v Janklow,
 
 733 F2d 534, 536).
 

 Under the resulting legislation, known as the Low-Income Home Energy Assistance Act of 1981 (LIHEAA) (42 USC § 8621
 
 et seq.),
 
 Congress was to make block grants of Federal dollars to qualified States which were then to distribute the funds "to assist low-income households * * * in meeting their immediate home energy needs” (42 USC § 8621 [a]). In keeping with the block grant format, Congress authorized States like New York that participate in HEAP to submit their own plans to administer and distribute the Federal funds for approval by the Secretary of Health and Human Services (42 USC § 8624 [a]). In general, each State’s plan must agree to "provide, in a timely manner, that the highest level of assistance will be furnished to those households which have the lowest incomes and the highest energy costs or needs in relation to income” (42 USC § 8624 [b] [5]).
 

 A household is eligible to receive HEAP benefits if it receives an AFDC grant, food stamps or other forms of public assistance or its combined income does not exceed 150% of the poverty line or 60% of a State’s median income (42 USC § 8624 [b] [2]). In addition, certain individuals — such as those who are in an institution which already receives Social Security benefits— are specifically excluded from receiving HEAP benefits (42 USC § 8624 [i]).
 

 Beyond those relatively broad parameters, however, the LIHEAA expressly delegates to the States the responsibility for formulating criteria as to "the eligibility requirements to be used * * * for each type of assistance to be provided” (42 USC § 8624 [c] [1] [A]). The significance of such delegation is highlighted by the applicable Department of Health and Human Services regulations which provide that "the States are primarily responsible for interpreting the governing statutory provisions. * * * [T]he Department will defer to a State’s interpretation * * * of the block grant statutes unless the interpre-.
 
 *391
 
 tation is clearly erroneous” (45 CFR 96.50 [e]). "So long as minimal requirements established under the Act are met, the states are free to design their own programs”
 
 (Rodriguez v Cuomo,
 
 953 F2d 33, 34).
 

 Acting upon this delegation as well as under provisions of State law (see, Social Services Law § 97 [2]), New York promulgated regulations establishing eligibility criteria for recipients of HEAP funds (18 NYCRR 393.4). To further assist in the administration of New York’s HEAP program, DSS also issued various administrative directives and manuals with specific instructions to be used by local social services districts when responding to HEAP applications (see, 87 ADM-51, 1990 NY St DSS HEAP Manual).
 

 At issue here is the DSS regulation, initially filed as an emergency measure effective February 27, 1989, which provides that in order to be eligible for emergency HEAP benefits,
 

 "the applicant must document that he/she is the tenant of record with primary responsibility for the payment of his/her heat-related residential energy bill. A
 
 tenant of record
 
 is a person who has * * * primary responsibility for payment of the monthly rent or mortgage for their dwelling unit. A homeowner whose mortgage has been satisfied is also considered a tenant of record. Individuals who contribute a portion of the monthly rent /mortgage to a person responsible for payment of the rent/ mortgage for their dwelling unit will not be considered a tenant of record.” (18 NYCRR 393.4 [d] [l].)
 
 [3]
 

 Because plaintiff contributes her monthly rent to John Potter, the person responsible for making mortgage payments, she does not meet this tenant of record requirement and challenges it as a violation of the LEHEAA.
 

 Faced with a similar challenge to New York’s HEAP regulations, the United States Court of Appeals for the Second Circuit upheld a DSS directive excluding tenants of government
 
 *392
 
 subsidized housing with heat included in their rent from receiving nonemergency HEAP funds (18 NYCRR 393.4 [c] [3] [i]) even though the regulation had the effect of excluding persons who otherwise satisfied the minimal eligibility criteria set forth in the statute
 
 (Rodriguez v Cuomo,
 
 953 F2d 33 [1992]).
 

 Outlining the extensive legislative history surrounding the LIHEAA as well as the relevant statutory provisions, the Second Circuit concluded that Congress did not intend that States must award HEAP benefits to each and every household which meets the minimal eligibility guidelines set forth in the statute. To the contrary, given the finite limits on Federal dollars, a State may target specified households to receive HEAP benefits in order to fulfill the statutory purpose of assisting those who have the highest energy costs or needs in relation to income.
 

 Citing
 
 Chevron U.S.A. v Natural Resources Defense Council
 
 (467 US 837), the Second Circuit reasoned that given the express delegation in the LIHEAA from Congress to the States, "the states stand in much the same position as would a federal administrative agency given authority over an analogous federally-controlled program” (id., at 39). Determining eligibility requirements to select the neediest households " 'requires the formulation of policy and the making of rules’ and thus is a determination that falls within the purview of the states’ interpretative authority” (id., at 40-41). Of course, as this Court has repeatedly stated, an "agency’s interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational”
 
 (Matter of Rodriguez v Perales,
 
 86 NY2d 361, 367). Applying that standard of review, the Second Circuit determined that New York "rationally conclude[d] that tenants occupying government subsidized housing with heat included in the rent are less in need of HEAP funds than, for example, tenants who do not live in such housing”
 
 (Rodriguez v Cuomo,
 
 953 F2d, at 41).
 

 The Second Circuit in
 
 Rodriguez v Cuomo
 
 thus read great significance into the block grant nature of the HEAP program. So do we. As outlined in the next section of this opinion discussing the validity of the tenant of record requirement under New York law, DSS’ rationale for the tenant of record criterion — that it assures that DSS make payments only to those most in need of them and that it allows DSS to do so in a timely and efficient manner — is fully consistent with the LIHEAA’s purpose and is not unreasonable, irrational or clearly erroneous. It will therefore not be disturbed by this Court on appeal.
 

 
 *393
 
 B. HEFPA/Social Services Law § 131-s
 

 Fifteen years ago, the New York Legislature enacted various amendments to the Social Services Law, the Public Service Law and the Transportation Corporations Law, collectively known as the Home Energy Fair Practices Act (HEFPA), relating to the supply and termination of utility service to low income New Yorkers (L 1981, ch 895). The broad purpose of this legislation was to coordinate efforts between DSS and local utility companies to identify and protect utility customers receiving or applying for public assistance threatened with disconnection of their utility service as a result of inability to pay their bill.
 

 Although applicable DSS regulations at the time guaranteed payment of utility costs only for a four-month period, a lower court decision apparently interpreted the law to require DSS to pay any arrearage incurred regardless of length or extent
 
 (see, Matter of Rivera v Berger,
 
 89 Misc 2d 586,
 
 affd
 
 60 AD2d 605). In order to restore the four-month time limit and conserve scarce public resources, the Legislature as part of HEFPA added a new section to the Social Services Law, originally designated section 131-p and changed a year later to section 131-s (L 1982, ch 230, § 4) — the provision at issue here. This new section was intended to clarify that DSS’ responsibility to compensate for unpaid utility bills “would be limited to a customer’s current bill and for four months of any arrearages”
 
 (see,
 
 Mem of Dept of Public Service, July 16, 1981, Bill Jacket, L 1981, ch 895).
 

 The text of Social Services Law § 131-s is relatively simple. In order to obtain funds to pay a utility bill, an individual like plaintiff applying for or receiving public assistance must be threatened with termination of utility service due to a lack of funds (Social Services Law § 131-s [1], [2] [a]). In addition, in cases where the applicant is already receiving public assistance benefits, the applicant must have fully applied any public assistance funds received (Social Services Law § 131-s [2] [a]) or made a written request to DSS in advance for a utility cost allowance (Social Services Law § 131-s [2] [b]). Assuming that these criteria are met, the statute provides that “the social services district in which such person resides shall,
 
 unless alternative payment or living arrangements can be made,
 
 make a payment to a gas corporation, electric corporation or municipality for services provided * * * for the most recent four months in which service was rendered prior to the application” (Social Services Law § 131-s [1], [2] [emphasis added]).
 

 
 *394
 
 Acting on the general grant of authority provided to it to establish rules and policies to administer the public assistance system in this State (Social Services Law § 20 [3] [d]; § 34 [3] [f]), DSS promulgated regulations effective March 27, 1986 (18 NYCRR 352.5) creating a comprehensive methodology for determining eligibility and payment methods under Social Services Law 131-s.
 

 Like the DSS regulations implementing the Federal program providing HEAP benefits on an emergency basis, these regulations require that recipients of public assistance such as plaintiff who seek additional State benefits under Social Services Law § 131-s demonstrate to DSS’ satisfaction that they are actually in need of the funds. To that end, DSS requires applicants to document that they are both the tenant of record and the customer of record with the utility company (18 NYCRR 352.5 [e], [f] [1]). As stated in the regulations themselves:
 

 "Prior to granting energy assistance * * * , it must be documented that the applicant * * * is the tenant and customer of record. A
 
 tenant of record
 
 is a person who has primary responsibility for payment of the monthly rent or mortgage for the dwelling unit. Individuals who contribute a portion of the monthly rent/mortgage to a person responsible for payment of the monthly rent/mortgage for the dwelling unit will not be considered a tenant of record. A
 
 customer of record
 
 is a person who has an account in his or her name with a home energy vendor.” (18 NYCRR 352.5 [a] [emphasis in original].)
 

 Relying on
 
 Matter of Jones v Berman
 
 (37 NY2d 42), plaintiff argues that DSS exceeded its authority in promulgating the tenant of record restriction under Social Services Law § 131-s because it constitutes a new eligibility requirement not found in the text of the statute itself.
 

 Matter of Jones v Berman
 
 involved three plaintiffs, two of whom had money and food stamps stolen from them after cashing their public assistance checks at the bank. Invalidating a DSS regulation that prevented these plaintiffs from obtaining an emergency AFDC grant on the ground that their resulting financial crisis was "due to loss, theft, or diversion of a grant already made,” this Court, stressing the plaintiffs’ utter lack of culpability, held that "the summary denial of assistance
 
 *395
 
 without regard to the honesty of the loss or the actual destitute circumstances of the people intended to be protected by the act, was both arbitrary and capricious” (37 NY2d, at 52-53). In reaching that result, the Court stated the general proposition that "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute”
 
 (id.,
 
 at 53).
 

 Despite plaintiffs argument, there is a significant difference between the regulation at issue in
 
 Berman
 
 and the tenant of record requirement challenged here. In
 
 Berman,
 
 there was nothing applicants whose public assistance benefits had been stolen from them could do to obtain emergency funds — being the victim of a crime is hardly a status within one’s control. Here, by contrast, all that plaintiff had to do in order to submit a proper application for emergency utility funds was to change the electricity account to Potter’s name as tenant of record. Plaintiff in fact was specifically advised to do so during a hearing on an application for natural gas funds the year before.
 

 As a practical matter, it was incumbent upon DSS to adopt rules and regulations to administer New York’s emergency energy assistance program and to establish a mechanism for the efficient and equitable distribution of finite funds. The particular documentation required to establish eligibility — rarely a topic covered in statutes — is one example of a matter relegated to the agency’s sound discretion. Various provisions in the Social Services Law reinforce this by conferring upon DSS the power to establish "rules, regulations and policies to carry out its powers and duties under this chapter” (Social Services Law § 20 [3] [d]) as well as "regulations for [the] administration of public assistance and care within the state” (Social Services Law § 34 [3] [f|;
 
 see also, Matter of Barie v Lavine,
 
 40 NY2d 565, 568).
 

 Thus, despite plaintiff’s broad reading of certain language in
 
 Matter of Jones v Berman (see,
 
 37 NY2d, at 53), the law does not foreclose all agency regulations going beyond the text of the statute. Rather,
 
 Matter of Jones v Berman
 
 permits such regulations as long as they are in harmony with the statute’s over-all purpose (37 NY2d, at 53).
 

 This principle that an agency like DSS may promulgate regulations going beyond the statute itself as long as they are consistent with legislative intent can be found in several of our cases since
 
 Matter of Jones v Berman
 
 involving challenges to
 
 *396
 
 agency-imposed, eligibility requirements for recipients of public assistance benefits. In
 
 Matter of Barie v Lavine
 
 (40 NY2d 565,
 
 supra),
 
 for example, we upheld a DSS regulation denying welfare benefits to individuals who failed to participate in a job referral program. Stressing the language in the statute requiring DSS to provide for those "unable to maintain themselves” (Social Services Law § 131 [1]), we concluded that the regulation was a reasonable exercise of administrative discretion in effectuating that purpose since it guaranteed that applicants who were capable of getting a job would be compelled to do so. As the Court explained: "While we are aware that the sanction may appear harsh to the petitioner, and the wisdom of the regulation by which it is employed has not gone unquestioned * * *, it is not the function of this court to sit in review of legislative policy and the rationally based implementation thereof by an administrative agency, so long as no constitutional or statutory mandate is violated”
 
 (id.,
 
 at 569 [citations omitted];
 
 see also, Matter of Mercy Hosp. v New York State Dept. of Social Servs.,
 
 79 NY2d 197, 204 ["If (a regulation) is reasonably designed to further the regulatory scheme, it cannot be disturbed by the courts unless it is arbitrary, illegal or runs afoul of the enabling legislation or constitutional limits”]).
 

 Similarly, in a case upholding a regulation setting a maximum shelter allowance for public assistance recipients without making exception for individual circumstances, we concluded that the "regulation reflecting the choice made by the department * * * is beyond our power to disturb unless it is 'so lacking in reason for its promulgation that it is essentially arbitrary’ ”
 
 (Matter of Bernstein v Toia,
 
 43 NY2d 437, 448 [citation omitted];
 
 see also, Baumes v Lavine,
 
 38 NY2d 296 [upholding regulation prohibiting public assistance funds from being used to replace worn-out furniture]).
 

 As is evident from its history, the Legislature’s immediate goal in enacting Social Services Law § 131-s was to save money by limiting emergency funds for utility costs to a four-month period. Also implicit in the statute is the principle that emergency energy assistance be made available only to those who legitimately need it. Specifically, the statute provides that benefits are payable only when no "alternative payment or living arrangements can be made” (subds [1], [2]). In fact, prior to adoption of the tenant of record requirement, local social services districts often found themselves in the unfortunate position of unwittingly having to pay the utility costs not only of qualified applicants, but also of individuals living with them
 
 *397
 
 who were in a far better economic position and who might otherwise be ineligible for public assistance in the first place.
 

 Intended to deter misuse of the system in this way, the tenant of record requirement was designed to insure that State-funded emergency utility benefits are distributed as carefully as possible by "enhancing] the ability of a social services district to determine eligibility for fuel allowances and * * * promoting] client accountability” (Proposed Rulemaking, Regulatory Impact Statement, NY St Register, Aug. 19, 1987, at 26). In so doing, DSS sought to "strik[e] a balance between the interests of recipients of public assistance and those of the State which must allocate limited welfare funds among those most in need of aid”
 
 (Matter of Barie v Lavine,
 
 40 NY2d at 568-569). Low income individuals on public assistance who are unable to support themselves are often not in a position to assume payment responsibility for a bill which provides utility service used by others and which supplies heat or electricity to a building for which they do not have to pay the rent or mortgage. Were DSS to pay the fuel and domestic utility bills of individuals who are not in fact the tenant of record, it would only be encouraging public assistance recipients to assume payment responsibility for utility costs regardless of whether they have the financial wherewithal or legal responsibility to do so. In other words, "[i]t is unlikely that the Legislature intended that payments be made for fuel and utility bills to an individual who does not have or should not have responsibility to pay such bills” (Notice of Adoption, Assessment of Public Comment, NY St Register, Dec. 30, 1987, at 146).
 

 Subsequent amendments to Social Services Law § 131-s (1) further demonstrate this policy of reducing wasteful expenditure of New York public assistance funds by requiring emergency utility applicants whose household income is above the poverty line to sign an agreement guaranteeing repayment within one year and permitting DSS to enforce such agreement by resort to conventional creditor remedies (L 1992, ch 41, § 128;
 
 Childs v Bane,
 
 194 AD2d 221).
 

 Certainly, the possibility that no true emergency exists is more than remote here. Potter — not plaintiff — is the owner of the single-family home in which plaintiff lives and is responsible for paying the mortgage. Plaintiff already pays Potter $400 in rent which includes her electricity costs. Thus, it is Potter’s — not plaintiff’s — responsibility to use that money to pay the utility bill.
 

 
 *398
 
 Moreover, Potter himself was not an applicant for emergency utility assistance or an AFDC recipient and DSS thus had no way of knowing whether or not he was eligible for public assistance funds. If Potter is in fact truly needy, then as the tenant of record he should apply for benefits under Social Services Law § 131-s. If he is not, then he should pay the utility arrearage himself. Unlike the regulation invalidated by the court in
 
 Matter of Robinson v Perales
 
 (166 AD2d 594), plaintiffs household was not categorically exempt from receiving emergency utility assistance benefits. She was simply the wrong person in the household to apply for them.
 

 C. Equal Protection
 

 Finally, plaintiff’s assertion that the tenant of record requirement violates her constitutional rights to equal protection is also devoid of merit.
 

 "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,’ it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality’ ”
 
 (Dandridge v Williams,
 
 397 US 471, 485 [citations omitted];
 
 see also, Lovelace v Gross,
 
 80 NY2d 419, 426-427).
 

 Although plaintiff is correct in asserting that she would satisfy the tenant of record requirement if she were Potter’s wife
 
 (see,
 
 18 NYCRR 393.4 [d] [1]; 352.5 [a]), her unmarried status is not what disqualifies her from receiving benefits. What does disqualify her is the fact that she is not the tenant of record. Assuming that Potter were to meet the other eligibility requirements set forth in the DSS regulations, there is no question that he would be entitled to receive emergency utility benefits under both the LIHEAA and Social Services Law § 131-s regardless of the fact that he is not married to plaintiff.
 

 In any event, even if plaintiff were to become Potter’s wife, applicable DSS regulations would not only prohibit Potter from charging her rent paid out of her monthly shelter allowance but also would require that any application for additional public assistance benefits be made by them jointly, with a sworn statement as to the financial situation of plaintiff as well as Potter.
 

 Given these factors, DSS’ decision to treat unmarried persons differently for purposes of determining eligibility for emergency utility benefits under the applicable Federal and State
 
 *399
 
 statutes was not unreasonable. "We can find no compelling constitutional or statutory reason to overturn the judgment of public officials charged with the onerous responsibility of disbursing limited welfare funds”
 
 (Matter of Barie v Lavine,
 
 40 NY2d 565, 569-570,
 
 supra).
 

 Accordingly, the judgment appealed from and the orders of the Appellate Division brought up for review should be reversed, without costs, and judgment granted declaring that the tenant of record rules promulgated at 18 NYCRR 393.4 and 352.5 do not violate Federal or State law in accordance with this opinion.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Judgment appealed from and orders of the Appellate Division brought up for review reversed, without costs, and judgment granted declaring in accordance with the opinion herein.
 

 [1]
 

 . Apparently, this was not the first time plaintiff was unable to pay her utility bill. In June 1989, plaintiff’s application for emergency public assistance utility funds to satisfy an arrearage in her natural gas account was denied on the ground that she was not the tenant of record. At the DSS hearing on that application, plaintiff was advised to list the natural gas account in Potter’s name so as to be eligible for benefits in the future.
 

 [2]
 

 . Given our conclusion that the tenant of record requirement is not violative of any Federal law, it is unnecessary for us to decide whether costs' and attorney’s fees were properly awarded to plaintiff pursuant to 42 USC § 1988 — an issue of Federal law (compare,
 
 Crawford v Janklow,
 
 710 F2d 1321,
 
 with Hunt v Robeson County Dept. of Social Servs.,
 
 816 F2d 150).
 

 [3]
 

 . States are directed to make HEAP funds available on both a regular and an emergency basis. Given the utility company’s threat to shut off her electricity, plaintiff’s HEAP application was limited to a request for emergency or "energy crisis intervention” funds which must be provided to qualified applicants no later than 48 hours after submission of a request (42 USC § 8623 [c] [1]). Although DSS regulations require that applicants for emergency HEAP funds (18 NYCRR 393.4 [d]) must be tenants of record, applicants for regular HEAP benefits do not have to satisfy the tenant of record requirement (18 NYCRR 393.4 [c]).