PENNSYLVANIA COMMUNITIES OR-GANIZING FOR CHANGE, INC., d/b/a ACTION United, Carol Collington, and Nettie Pelton, Petitioners

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 12, 2014.

Decided April 10, 2014.

Patrick M. Cicero, Harrisburg, for petitioners.

Louise G. Fink Smith, Assistant Counsel, Harrisburg, for respondent.

Michael W. Hassell, Harrisburg, for intervenor Columbia Gas of Pennsylvania, Inc.

Candis A. Tunilo, Assistant Consumer Advocate, Harrisburg, for intervenor office of Consumer Advocate.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION by President Judge PELLEGRINI.

Pennsylvania Communities Organizing for Change, Inc., d/b/a ACTION United, Carol Collington, and Nettie Pelton (collectively, ACTION) petitions for review of the order of the Pennsylvania Public Utility Commission (Commission) denying its exceptions and adopting the Administrative Law Judge's (ALJ) Recommended Decision, as modified, dismissing ACTION's challenge to how certain energy assistance funds were allocated. For the reasons that follow, we affirm.

Columbia Gas of Pennsylvania, Inc. (Columbia) provides natural gas service to residential, commercial, industrial, resale and transportation customers in parts of western and central Pennsylvania. Columbia provides a customer assistance plan (CAP) which reduces the amount its residential customers with incomes at or below 150% of the Federal Poverty Level (FPL) have to pay for their natural gas service. These reduced rates are authorized under the Natural Gas Choice and Competition Act, 66 Pa.C.S. §§ 2201–2212, and the Commission's regulations, 52 Pa.Code §§ 69.261–69.267. The reduced amount is referred to as the "asked-to-pay" amount. The remainder of the CAP customer's bill, referred to as the "CAP Shortfall" or the "CAP credit," which is paid by a surcharge on all other residential non-CAP customers collected by Columbia, is referred to as the Universal System Plan (USP) Rider. The Commission reviews Columbia's CAP every three years through its Universal Service and Energy Conservation Plan filing and through general base rate proceedings.

The Low–Income Home Energy Assistance Program (LIHEAP) is a federal block grant program administered by the Pennsylvania Department of Public Welfare (Department) pursuant to an annual State Plan that provides assistance to low-income customers in meeting their home heating needs.[1] LIHEAP has three com-

---

1. As the New York Court of Appeals has explained:

The Federally funded Home Energy Assistance Program, commonly known as [LI-]HEAP, had its origins during the beginning

ponents: cash, crisis and weatherization; a cash grant for an individual household is determined by a number of factors under Section 601.4(1) of the Department's regulations, 55 Pa.Code § 601.4(1). The component at issue here is the cash grant paid directly to Columbia as a LIHEAP provider through a vendor agreement.

Prior to 2009, Columbia and other providers applied the cash grant to a CAP customer's bill. *See* 52 Pa.Code § 69.265(9)(iii). This Commission regulation directed that the LIHEAP cash grant be applied to the portion of the CAP customer's bill that the CAP customer did not pay, *i.e.*, the CAP Shortfall or CAP Credit. In 2010, the Department directed the utili-

ties to apply the LIHEAP cash grant to the CAP customer's asked-to-pay amount rather than the CAP Shortfall. The net result was that subsidized customers paid more of their natural gas bill because the asked-to-pay amount was directly offset by the LIHEAP cash grant and the cash grant was no longer applied to the customer's CAP Shortfall.

Columbia then developed a new plan called the CAP–Plus program, under which the LIHEAP cash grant is directly applied to a CAP customer's asked-to-pay amount, but the asked-to-pay amount was now determined through a two-step process: first, one of four options is selected for the customer to form a base amount;[2]

of the Reagan administration's effort "to allocate funds to the states in the form of block grants so that they could be used efficiently in meeting the differing needs of local communities" (*Rodriguez v. Cuomo*, 953 F.2d 33, 38 [(2d Cir.1992)]). Acting in this spirit as part of the 1981 Omnibus Budget Reconciliation Act, Congress decided to repeal an earlier low-income energy assistance statute (42 U.S.C. §§ 8601–8612 [added by Pub.L. 96–223]) and "replace[] it with a fiscally trimmer version ... which removed many of the federal regulations that had controlled the distribution of federal energy assistance funds" (*Clifford v. Janklow*, 733 F.2d 534, 536 [(8th Cir. 1984)]).

Under the resulting legislation, known as the Low–Income Home Energy Assistance Act of 1981 (LIHEAA) (42 U.S.C. § 8621 *et seq.*), Congress was to make block grants of Federal dollars to qualified States which were then to distribute the funds "to assist low-income households ... in meeting their immediate home energy needs" (42 U.S.C. § 8621[a]). In keeping with the block grant format, Congress authorized States [ ... ] that participate in [LI]HEAP to submit their own plans to administer and distribute the Federal funds for approval by the Secretary of Health and Human Services (42 U.S.C. § 8624[a]). In general, each State's plan must agree to "provide, in a timely manner, that the highest level of assistance will be furnished to those house-

holds which have the lowest incomes and the highest energy costs or needs in relation to income" (42 U.S.C. § 8624[b][5]).

\* \* \*

Beyond those relatively broad parameters, however, the LIHEAA expressly delegates to the States the responsibility for formulating criteria as to "the eligibility requirements to be used ... for each type of assistance to be provided" (42 U.S.C. § 8624[c][1][A]). The significance of such delegation is highlighted by the applicable Department of Health and Human Services [(HHS)] regulations which provide that "the States are primarily responsible for interpreting the governing statutory provisions.... [HHS] will defer to a State's interpretation ... of the block grant statutes unless the interpretation is clearly erroneous" (45 C.F.R. § 96.50[e]). "So long as minimal requirements established under the Act are met, the states are free to design their own programs" (*Rodriguez[ ]*, 953 F.2d [at] 34).

*Goodwin v. Perales*, 88 N.Y.2d 383, 389–91, 646 N.Y.S.2d 300, 669 N.E.2d 234, 236–37 (1996).

2. The four options are: (1) a percentage of income plan set at 7% of income for those at 0% to 110% of the FPL and at 9% of income for those at 111% to 150% of the FPL; (2) the average of the customer's last 12 months of payments; (3) a discounted bill equal to 50% of the customer's budget billing amount; or

and second, a "plus" amount is added to each CAP customer's monthly bill determined by using the aggregate LIHEAP cash grant received by Columbia in the prior year divided by the number of CAP customers divided by 12 to cover the CAP Shortfall that was formerly offset by LIHEAP funds under Section 69.265(9)(iii). (R.R. at 74a–75a).[3] The "plus" amount is added to every CAP customer's bill whether or not they participate in LIHEAP and totaled $17.00 per month for each CAP customer for the 2010–2011 heating season. (*Id.* at 76a).

In January 2010, Columbia filed a proposed Supplement to its Tariff by increasing its base rate, *i.e.,* the amount charged its customers. In June 2010, the parties to that proceeding filed a joint petition for settlement which specified, *inter alia,* that Columbia would adopt the CAP–Plus plan consistent with a recommendation made by the Office of Consumer Advocate (Consumer Advocate). In July 2010, HHS issued a LIHEAP Information Memorandum concerning the use of LIHEAP funds

coordinated with the vendor assistance programs.[4] Nonetheless, in August 2010, the Commission approved Columbia's use of the CAP–Plus program in the base rate proceedings. In October 2010, the Commission approved Columbia's petition to amend its Universal Service and Energy Conservation Plan which included the CAP–Plus program.

In 2011, in subsequent base rate proceedings, the Consumer Advocate and a number of other parties filed a, formal protest challenging Columbia's proposed increased rates.[5] In that proceeding ACTION filed a formal protest challenging Columbia's use of LIHEAP funds, contending that the CAP–Plus plan violates Section 2605(b)(7) of the LIHEAA, 42 U.S.C. § 8624(b)(7),[6] and Pennsylvania's State Plan, and the HHS and Department guidance and directives because it treats LIHEAP grant recipients "adversely" by adding a "plus" amount to the bills of CAP participants reflecting that these customers will either receive the LIHEAP grant

(4) a discounted bill equal to 75% of the customer's budget billing amount for selected seniors. *See* (Reproduced Record (R.R.) at 454a).

**3.** A $5.00 co-payment toward a customer's pre-program arrears was also imposed. (R.R. at 454a).

**4.** The Information Memorandum states, in relevant part:

HHS has determined that the process of subtracting the LIHEAP benefit from the client's energy bill and to then calculate the [percentage of income payment plan (PIPP)] discount and/or the client's payment amount appears to be using LIHEAP as a resource and creates an inequity or adverse treatment for LIHEAP clients participating in the PIPP. Such a use of LIHEAP funds appears to be out of compliance with Sections 2605(b)(7) of the LIHEAP statute ... and Section 2605(f).

(R.R. at 97a).

**5.** Objections filed by the Consumer Advocate have been resolved and are not before us.

**6.** Section 2605(b)(7) provides:

(b) Certifications required for covered activities
As part of the annual application required by subsection (a) of this section, the chief executive officer of each State shall certify that the State agrees to—

＊ ＊ ＊

(7) if the State chooses to pay home energy suppliers directly, establish procedures to—

＊ ＊ ＊

(C) assure that the home energy supplier will provide assurances that any agreement entered into with a home energy supplier under this paragraph will contain provisions to assure that no household receiving assistance under this subchapter will be treated adversely because of such assistance

or will be eligible to receive the grant, whereas non-CAP customers are not charged the additional fee. ACTION also claimed that the CAP–Plus program also violates Section 2605(f)(1) of the LIHEAA, 42 U.S.C. § 8624(f)(1),[7] because it uses the customer's receipt or eligibility to receive a LIHEAP grant as a resource in determining the amount of the CAP payment.

Before the ALJ's hearing, ACTION presented the written testimony of Philip Bertocci, Esquire, the Supervising Attorney of the Energy Unit for Community Legal Services, who stated that the CAP–Plus Program violates those provisions because it only imposes a fee on CAP customers and it uses the LIHEAP grant as a resource in determining the amount of CAP payments which results in LIHEAP funds subsidizing the CAP program. (R.R. at 71a, 75a, 83a–84a). He testified that Columbia's CAP–Plus program also violates public policy because it appears to place the greatest new financial burden on its poorest customers. (Id. at 85a, 90a, 92a).

The Consumer Advocate presented the written testimony of Roger Colton, Esquire (Colton), an expert in low-income energy assistance programs and the design of CAPs, who stated that the Government Performance and Results Act of 1993, Pub.L. 103–62, 107 Stat. 285 (codified

in portions of Titles 5, 31 and 39 of the U.S.Code), and Section 2605(b)(4) of the LIHEAA, 42 U.S.C. § 8624(b)(4),[8] requires the close coordination of the LIHEAP and CAP programs so that they are "mutually reinforcing." (R.R. at 149a–151a). He testified that LIHEAP is a more limited program than CAP and that the concerns of HHS and the Department are more limited than the Commission's because HHS and the Department are exclusively concerned with the affordability of heating service during the heating season and the impact of LIHEAP benefits while the Commission is concerned with the affordability of home energy to both CAP and non-CAP participants, some of whom receive LIHEAP assistance. (Id. at 150a–152a).

Colton stated that the CAP–Plus program does not violate the Section 2605(f)(1) prohibition against using the LIHEAP grant as a resource in determining the amount of the CAP payment because that only prohibits decreasing the CAP benefits to a specific household based on the amount of LIHEAP that household receives. Under the Tariff, CAP customers receiving LIHEAP and CAP customers not receiving LIHEAP are treated identically, and the amount of LIHEAP is not considered as a resource in determin-

---

under applicable provisions of State law or public regulatory requirements....

7. Section 2605(f)(1) provides:
    (f) Payments or assistance not to be deemed income or resources for any purpose under Federal or State law; determination of excess shelter expense deduction
    (1) Notwithstanding any other provision of law unless enacted in express limitation of this paragraph, the amount of any home energy assistance payments or allowances provided directly to, or indirectly for the benefit of, an eligible household under this subchapter shall not be considered income or resources of such household (or any member thereof) for any purpose under any

Federal or State law, including any law relating to taxation, supplemental nutrition assistance program benefits, public assistance, or welfare programs.

8. Section 2605(b)(4) provides, in pertinent part:
    (b) Certifications required for covered activities
    As part of the annual application required by subsection (a) of this section, the chief executive officer of each State shall certify that the State agrees to—

    *     *     *

    (4) coordinate its activities under this subchapter with similar and related pro-

ing the asked-to-pay amount. (R.R. at 165a, 166a–168a). He specifically stated, "The Columbia Gas CAP–Plus program does not consider the amount of a LIHEAP grant received by any customer in setting a customer's asked-to-pay amount." (*Id.* at 333a). He also testified that the CAP–Plus plan does not violate Section 2605(b)(7) because a LIHEAP recipient on CAP is not treated differently than a non-CAP LIHEAP recipient. (*Id.* at 170a–175a).

Columbia presented the written testimony of Deborah Davis (Davis), Columbia's Manager of Universal Services, who stated that the CAP policy statement strongly encourages utilities to review customer accounts and to not allow any CAP customer to be over a CAP Shortfall maximum of $840.00,[9] and that Columbia's use of the LIHEAP grant in 2009 reduced the average shortfall to $847.00. (R.R. at 239a). She testified that the Department policy clarification and the resultant increase in CAP customer shortfalls results in the customer's violation of the shortfall limit and possible removal from the program. (*Id.*). She noted that Columbia had the lowest payment plan for customers resulting in the third highest average shortfall cost of all natural gas utilities in Pennsylvania, and that CAP–Plus was adopted to avoid an additional burden to non-CAP ratepayers because the LIHEAP grant had to be directly applied to the CAP asked-to-pay amount. (*Id.* at 239a–240a).

Davis also stated that the Department's LIHEAP Projects Manager communicated that as long as the increased payment applied to all CAP customers, whether or not they received LIHEAP, the Department concurs with the CAP–Plus program design. (R.R. at 240a–241a). Davis testified that non-CAP customers with average consumption currently pay $40.00 per year for the CAP and LIURP[10] programs, and that absent the CAP–Plus program, non-CAP customers would have to pay an additional $16.00 per year so that a CAP customer can pay less than he or she was successfully paying in prior years. (*Id.* at 244a–245a).

In response to Davis's testimony, ACTION applied for a subpoena to the Department. The Department's acting Deputy Secretary of its Office of Income Maintenance submitted a letter asserting the potential for conflict between Columbia's CAP–Plus plan and the Department's interpretation of the LIHEAA requirements. (R.R. at 305a–308a). However, the parties stipulated that the letter was only admitted for the fact of its existence and the ALJ took official notice of the letter, but not for the truth of the matters asserted. *See* 52 Pa.Code § 5.408 (relating to official or judicial notice of facts by the Commission or the ALJ). (R.R. at 341a–342a, 343a, 347a–348a).

In her Recommended Decision regarding ACTION's challenge to the CAP–Plus plan, the ALJ found that the Commission is empowered to determine the appropriate rates for energy,[11] including charges

grams administered by the Federal Government and such State....

9. *See* Section 69.265(3)(v)(A) of the Commission's regulations, 52 Pa.Code § 69.265(3)(v)(A) ("The annual maximum CAP credits per gas heating participant should not exceed $840.").

10. *See* Section 54.72 of the Commission's regulations, 52 Pa.Code § 54.72 (*"LIURP—Low-*

*income usage reduction program*—An energy usage·reduction program that assists low-income customers conserve energy and reduce residential energy bills.").

11. Section 2203(8) of the Natural Gas Choice and Competition Act provides:

The following interdependent standards shall govern the commission's actions in adopting rules, orders or policies and in

such as the USP Rider and the CAP–Plus charge, and that HHS and the Department can merely dictate how federal LIHEAP funds are applied to a customer's bill and not how the Commission should structure a utility's rates. As a result, the ALJ found that the Commission has the authority to create a rate structure which requires all CAP participants to pay a "plus amount" and recommended that the Commission approve the CAP–Plus program as implemented, but require Columbia to apply the LIHEAP grant to the recipient's account without deducting the annualized CAP–Plus payments first. ACTION then filed exceptions to the Recommended Decision with the Commission.

In its exceptions, ACTION first alleged that the ALJ failed to recognize that CAP–Plus treats a CAP participant's cash grant as an available "resource" in violation of Section 2605(f)(1) of the LIHEAA. It argued that because only CAP customers had the "plus" amount added to their approved CAP bill, LIHEAP recipients who are in CAP are treated adversely compared to LIHEAP recipients not in CAP. ACTION asserted that the ALJ erred by

> reviewing, assessing and approving each natural gas distribution company's restructuring filings and overseeing the transition process and regulation of the restructured natural gas utility industry:
>
> \*  \*  \*
>
> (8) The commission shall ensure that universal service and energy conservation policies, activities and services are appropriately funded and available in each natural gas distribution service territory. The commission shall encourage the use of community-based organizations that have the necessary technical and administrative experience to be the direct providers of services or programs which reduce energy consumption or otherwise assist low-income retail gas customers to afford natural gas service. Programs under this paragraph shall be subject to the administrative oversight of the commission, which shall ensure that the pro-

comparing CAP recipients receiving LIHEAP to CAP recipients not receiving LIHEAP rather than comparing a sub-set of LIHEAP recipients with another subset of LIHEAP recipients. The Commission denied this exception, stating:

> We agree with both Columbia and [the Consumer Advocate] that [ACTION]'s comparison is erroneous as CAP customers receive an affordable bill under CAP–Plus that is less than that received by non-CAP customers for two reasons: (1) the non-CAP customer does not receive the CAP discount; and (2) the non-CAP customer must pay for the CAP customers' discounts through the Rider USP charge. Columbia has demonstrated that the CAP LIHEAP recipient pays a bill that is equal to or less than any other group both before and after consideration of the LIHEAP grant. Furthermore, [ACTION]'s argument is based upon consideration of only the CAP–Plus amount and ignores the substantially lower asked-to-pay amount and the arrearage forgiveness granted for the CAP customer. Therefore, [ACTION]'s exception is denied.

> grams are operated in a cost-effective manner.

66 Pa.C.S. § 2203(8).

In turn, Section 2202 defines "universal service and energy conservation" as:

> Policies, practices and services that help residential low-income retail gas customers experiencing temporary emergencies, as defined by the commission, to maintain natural gas supply and distribution services. The term includes retail gas customer assistance programs, termination of service protections and consumer protection policies and services that help residential low-income and other residential customers experiencing temporary emergencies to reduce or manage energy consumption in a cost-effective manner, such as the low-income usage reduction programs and consumer education.

66 Pa.C.S. § 2202.

(Commission's 3/15/12 Opinion at 36–37, 38) (citation omitted).

ACTION also claimed that the ALJ failed to recognize that CAP–Plus treats LIHEAP recipients who are CAP customers adversely compared to LIHEAP recipients who are not CAP customers in violation of Section 2605(b)(7) of the LIHEAA. It argued that for each CAP participant who receives LIHEAP, adding the "plus" amount to his or her CAP payment after the CAP payment is calculated has the effect of treating the LIHEAP grant as an available resource. The Commission denied this exception, stating:

> Based upon our review and analysis of the record, we agree with the comments of Columbia and [Consumer Advocate] and support the recommendation of the ALJ on this issue. As noted by Columbia, every CAP customer is charged the Plus amount irrespective of whether the customer receives a LIHEAP grant. Analysis of the record evidence shows that CAP–Plus does not treat any individual LIHEAP recipient's grant as a resource when determining the portion of the customer's total energy bill that the customer is asked to pay. [ACTION]'s contention to the contrary is erroneous. Accordingly, [ACTION]'s exception is denied.

(*Id.* at 42, 44) (citation omitted).

Finally ACTION contended that the ALJ erred in finding that the Commission may dictate how much a CAP participant must pay notwithstanding the directives and prohibitions in the LIHEAA statute.

ACTION argued that the Department's authority over LIHEAP administration and oversight must be respected regarding the lawful integration of LIHEAP funds within Columbia's CAP–Plus ratemaking and bill payment process. The Commission denied this exception, stating:

> It is fully within this Commission's authority and jurisdiction to determine how much a customer must pay while respecting the federal law as to the use and application of the LIHEAP grant to the individual recipient. It is this Commission's responsibility to determine the amount of CAP customers' bills that it finds to be reasonable and affordable. We note that in the CAP–Plus program, neither the individual's LIHEAP grant, nor the actual LIHEAP receipts, is used in any manner in establishing a CAP customer's asked-to-pay amount, nor is an individual's receipt of LIHEAP used in any way to set the individual customer's asked-to-pay amount. The Commission approved the initiation of Columbia's CAP–Plus program as it established a reasonable balance of the burdens and responsibilities between CAP and non-CAP customers and this program should be allowed to remain in effect. Accordingly the Exception of [ACTION] is denied.

(*Id.* at 48–49). As a result, the Commission adopted the Recommended Decision, as modified, and dismissed ACTION's Formal Complaint. This appeal followed.[12]

▆ In this appeal,[13] ACTION again argues [14] that there was not substantial

---

**12.** The Consumer Advocate and Columbia have intervened in the appeal.

**13.** This Court's scope of review of the Commission's order is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.

C.S. § 704; *Lloyd v. Pennsylvania Public Utility Commission*, 904 A.2d 1010, 1013 n. 4 (Pa.Cmwlth.2006), *appeals denied*, 591 Pa. 676, 677, 916 A.2d 1104, 1105 (2007). Substantial evidence is that quantum of evidence which a reasonable mind might accept as adequate to support a conclusion. *Norfolk & Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 127, 413

evidence for the Commission to determine that the CAP–Plus plan does not violate Section 2605(b)(7)(C) and 2605(f)(1) of the LIHEAA because the Commission focused on its rate-making authority and ignored evidence demonstrating how the CAP–Plus plan uses the LIHEAP cash grant to calculate a CAP customer's asked-to-pay amount. By doing so, ACTION argues that the Commission treated LIHEAP as a resource in violation of the LIHEAA, and that its finding that the "plus" amount is merely part of a customer's asked-to-pay amount is not supported by substantial evidence.

■ ACTION also argues that the CAP–Plus plan violates Section 2605(b)(7)(C) of the LIHEAA which requires the Commonwealth to establish procedures to "assure that the home energy supplier will provide assurances that any agreement entered into with a home energy supplier . . . will contain provisions to assure that no household receiving assistance . . . will be treated adversely because of such assistance under applicable provisions of State law or public regulatory requirements. . . ." 42 U.S.C. § 8624(b)(7)(C). ACTION argues that CAP–Plus violates this provision because the LIHEAP customers participating in that plan are required to pay the "plus" amount that is added to their asked-to-pay amount, whereas non-participating LI-

HEAP customers are not required to pay the "plus" amount.

In making these arguments, ACTION erroneously compares CAP–Plus participating customers to CAP non-participating customers when it should compare LIHEAP recipients to non-LIHEAP recipients. When making the correct comparison, the evidence establishes that LIHEAP recipients have no burden or obligation under CAP–Plus that is different from LIHEAP non-recipients. LIHEAP non-recipients have no benefit conferred upon them that is not equally available to and conferred upon LIHEAP recipients, and the receipt of LIHEAP is not a factor when Columbia makes any decision regarding any given CAP participant in administering its CAP. (R.R. at 175a).

Moreover, for all LIHEAP recipients, both CAP participating and CAP non-participating, Columbia applies the customer's entire LIHEAP grant to the asked-to-pay amount whether the bill is a full bill or a reduced bill under CAP–Plus. As Colton explained, "[i]n both cases, 100% of the LIHEAP grant is applied against the customer's asked-to-pay amount. The difference in the asked-to-pay amounts between a CAP participant and a CAP non-participant is a function of CAP program design, not a function of LIHEAP participation." (R.R. at 170a–171a).

A.2d 1037, 1046 (1980). The Commission, not the ALJ, is the ultimate fact-finder and must resolve conflicts in the testimony and weigh the evidence presented. *Energy Conservation Council of Pennsylvania v. Pennsylvania Public Utility Commission*, 25 A.3d 440, 453 (Pa.Cmwlth.2011) (citation omitted). As a result, this Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision on a matter within its expertise. *Popowsky v. Pennsylvania Public Utility*

*Commission*, 550 Pa. 449, 457, 706 A.2d 1197, 1201 (1997).

14. To the extent that ACTION raises arguments not contained in its exceptions that were addressed by the Commission or that are not contained in its petition for review or Statement of Questions Presented portion of its appellate brief, they have been waived for purposes of appeal. Pa. R.A.P. 1513(d), 1551(a), 2116(a); *McGrath v. State Board of Dentistry*, 159 Pa.Cmwlth. 159, 632 A.2d 1027, 1030–31 (1993).

Additionally, the Commission's conclusion that CAP customers do not pay more under the CAP–Plus plan is supported by Colton's testimony that "in no case will a CAP recipient receiving LIHEAP be worse off under CAP–Plus ...," and that "[i]n every case in which a low-income customer receives a LIHEAP grant, that customer will experience the need to devote fewer out-of-pocket dollars to paying his or her Columbia Gas bill than had the customer not received a LIHEAP grant...." (R.R. at 157a, 173a). Likewise, Davis testified that "the plus amount is less than the minimum LIHEAP grant. All customers who apply for and receive LIHEAP will pay less this year than they paid last year, even with the additional plus amount...." (*Id.* at 241a–242a). Based on the foregoing, there is substantial evidence to support the Commission's determination that the CAP–Plus plan does not treat LIHEAP recipients adversely in violation of Section 2605(b)(7)(C) of the LIHEAA.

■ With respect to Section 2605(f)(1) of the LIHEAA, it states, in pertinent part, that "the amount of any home energy assistance payments or allowances provided directly to, or indirectly for the benefit of, an eligible household ... shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law...." 42 U.S.C. § 8624(f)(1). ACTION argues that CAP–Plus violates this provision because the "plus" fee added to a participating customer's asked-to-pay amount is calculated by using the prior year's aggregate LIHEAP grant which has the effect of treating his or her LIHEAP grant as an available resource in violation of Section 2605(f)(1) of the LIHEAA.

Columbia's Tariff provides, in pertinent part, that "[i]n addition to the monthly payment established under either Option # 1, # 2, # 3, or Senior CAP Option, the CAP customer is required to pay a five-dollar ($5.00) co-payment towards pre-program arrears, as well as an additional amount calculated each year based on the previous year's LIHEAP grants applied to CAP accounts." (R.R. at 454a). As the Commission noted, every CAP customer is charged the "plus" amount irrespective of whether the customer receives a LIHEAP grant, and the CAP–Plus plan does not treat any individual LIHEAP recipient's grant as a resource in determining the customer's asked-to-pay amount.

This conclusion is supported by Colton's testimony that:

> The "plus" amount imposed as an additional CAP payment is unrelated to the amount of LIHEAP received by any given CAP participant, as well as unrelated to whether or not a CAP participant receives LIHEAP at all. A CAP participant receiving $100 in LIHEAP benefits is billed the same "plus" amount as the CAP participants receiving $500 in LIHEAP benefits. A CAP participant receiving *no* LIHEAP benefits (i.e., is a LIHEAP non-recipient) is billed the same "plus" amount as the CAP participant who receives a $500 benefit. In each case, the CAP participant, to the extent that he or she receives LIHEAP (if at all), would apply that LIHEAP benefit against his or her asked-to-pay amount. The asked-to-pay amount, however, does not change based on whether or not a LIHEAP benefit is received, or based on what the level of that benefit (if any) might be.

(R.R. at 167a–168a) (emphasis in original).[15] Based on the foregoing, there is

---

**15.** This testimony also supports the Commis-

sion's finding that the "plus" amount is mere-

substantial evidence to support the Commission's determination that the CAP–Plus plan does not treat LIHEAP as a resource to its recipients in violation of Section 2605(f)(1) of the LIHEAA.[16]

Section 2203(8) of the Natural Gas Choice and Competition Act provides that programs assisting low-income retail gas customers "shall be subject to the administrative oversight of the commission, which shall ensure that the programs are operated in a cost-effective manner." 66 Pa.C.S. § 2203(8). In this case, the Commission's adoption of a CAP–Plus Tariff outlining the rates to be paid by low-income customers and providing how LIHEAP grants are to be applied does not violate either Section 2605(b)(7)(C) or Section 2605(f)(1) of the LIHEAA because substantial evidence show that LIHEAP customers are not treated adversely and their LIHEAP grant is not considered as a resource in determining their CAP–Plus asked-to-pay amount. Because such determinations are

properly within the Commission's statutory authority under Section 2203(8), they will not be disturbed in this appeal because they are not clearly erroneous and the Commission's order is affirmed. *See Metropolitan Edison Co. v. Pennsylvania Public Utility Commission*, 22 A.3d 353, 362 (Pa.Cmwlth.2011), *appeal denied*, 615 Pa. 760, 40 A.3d 123 (2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 426, 184 L.Ed.2d 289 (2012).

### *ORDER*

AND NOW, this *10th* day of *April*, 2014, the order of the Pennsylvania Public Utility Commission, dated March 15, 2012, at No. C–2011–2232186, is affirmed.

ly part of a customer's asked-to-pay amount under Columbia's Tariff. As Colton also explained:

> The way that the LIHEAP statute ensures that the "full benefit" of a LIHEAP grant is delivered to the customer is to prohibit the *amount* of the LIHEAP grant for that customer to be taken into consideration in deciding what the level of the bill for *that particular* customer will be. The Columbia Gas CAP–Plus program does not do that. The Columbia Gas CAP–Plus program does not consider the amount of a LIHEAP grant received by any customer in setting a customer's asked-to-pay amount.

(R.R. at 332a–333a) (emphasis in original).

**16.** To the extent that ACTION argues that adding the "plus" amount to the asked-to-pay amount subsidizes the CAP–Plus program with LIHEAP funds, Colton testified that "LIHEAP benefits do not 'subsidize' the CAP program in any fashion. Under CAP–Plus, LIHEAP benefits are applied, in whole, against the 'CAP bill,' defined as the expected monthly CAP payment by the customer. In contrast, 100% of the 'CAP credit' is paid by non-participants. Not one dollar of LIHEAP is used to offset the 'CAP credit.'" (R.R. at 177a).